The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie Dollar. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following; which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act and the employee-employer relationship existed between the parties at all relevant times.
2. The defendant was a duly qualified self-insured with Trigon Administrators as the third-party administrator.
3. The plaintiff's average weekly wage was $413.97, which yields a weekly compensation rate of $275.99.
4. Three videotapes of plaintiff's job were submitted, with written job descriptions. The plaintiff's recorded statement and Answers to Interrogatories were submitted into the record.
5. The issues for determination are:
 a. Whether the plaintiff has contracted a compensable occupational disease, and if so, to what benefits may he be entitled; and,
 b. Whether the defendant is entitled to seek an independent medical evaluation of the plaintiff.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. The plaintiff began working for defendant in 1982 as a boring machine operator, where he continued to work until June of 1994 when he was promoted to lead man.
2. As a lead man, the plaintiff was responsible for setting up, maintaining, repairing, and operating ten machines, including the horizontal boring machine, vertical boring machine, variety saw, band saw, hand shaper, bell miter, haunching machine, slot mortise machine, parting-rail boring machine, and R-9 router. A number of the machines require the constant use of fingers, hand and arms.
3. The plaintiff was required to use his hands to manipulate wrenches, hammers, adjustment wheels, and small tools, and to apply pressure to make the necessary adjustments to perform the set-up of machines.
4. Operation of the machines required plaintiff to repetitively use his hands to grasp, flip, and rotate boards to run them in the machines. The machines vibrated when processing the boards.
5. The plaintiff spent approximately half of each work shift performing set-up and half of the shift operating the machine.
6. Twice each year, the plaintiff was responsible for running samples of furniture items for the Market in Hickory. The plaintiff would set-up a machine, run six to ten pieces of wood, moving to the next machine and doing likewise on the other machines until one or two complete pieces of furniture were completed for the Market.
7. In November of 1994, the plaintiff began to experience numbness in his fingers while operating the machines. The plaintiff reported this to supervisor Carl Slaton, who referred plaintiff to the plant nurse who provided him with wrist splints, Ibuprofen and vitamins.
8. The defendant denied the compensability of plaintiff's claim.
9. On November 3, 1994, the plaintiff went to orthopaedic surgeon Dr. John dePerczel who diagnosed him as having bilateral carpal tunnel syndrome, which was absolutely aggravated by his job. After splints and medication did not resolve the problem, Dr. dePerczel recommended surgery.
10. The plaintiff next sought medical treatment from Dr. E. Brown Crosby, a hand surgeon, on April 11, 1995. Left carpal tunnel release surgery was performed on May 15, 1995, with the surgery on the right wrist on May 3, 1995.
11. The plaintiff's work with defendant placed him at an increased risk of developing carpal tunnel syndrome than the general public.
12. The plaintiff's bilateral carpal tunnel syndrome is characteristic of and peculiar to his employment with defendant.
13. As a result of the occupational disease, the plaintiff was incapable of earning wages from May 11, 1995 through September 13, 1995.
14. As a result of the occupational disease, the plaintiff reached maximum medical improvement and retains a fifteen percent permanent partial impairment to his right hand, and a seven and one-half percent to the left hand.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On or about early November of 1994, the plaintiff contracted an occupational disease, bilateral carpal tunnel syndrome which was caused or aggravated by his employment with the defendant. N.C. GEN. STAT. § 97-53 (13).
2. The plaintiff's bilateral carpal tunnel syndrome is characteristic of and peculiar to the plaintiff's job, and the job placed plaintiff at an increased risk of contracting the condition, as compared to the general public. N.C. GEN. STAT. § 97-53 (13).
3. As a result of the compensable occupational disease, the plaintiff is entitled to temporary total disability compensation from May 11, 1995 through September 13, 1995. N.C. GEN. STAT. § 97-29.
4. As a result of the compensable occupational disease, the plaintiff is entitled to permanent partial disability compensation for thirty weeks, as a result of the fifteen percent rating to the right hand and for fifteen weeks, for the seven and one-half percent rating to the left hand. N.C. GEN. STAT. § 97-31 (12).
5. The plaintiff is entitled to have defendants pay for medical expenses incurred as a result of the compensable occupational disease. N.C. GEN. STAT. § 97-2 (19) and -25.
* * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendant shall pay temporary total disability compensation to the plaintiff in a lump sum at the rate of $275.99 per week for the period from May 11, 1995 through September 13, 1995.
2. Subject to a reasonable attorney's fee herein approved, the defendant shall pay permanent partial impairment compensation to plaintiff in a lump sum for 45 weeks at the rate of $275.99 per week as a result of the ratings to the left and right hands.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff in paragraphs 1 and 2 above shall be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. The defendant shall pay medical expenses incurred by plaintiff as a result of the compensable occupational disease, when such bills have been properly submitted.
5. Defendant shall pay the costs, including expert witness fees of $200.00 to E. Brown Crosby, M.D., and $200.00 to Stephen J. Naso, M.D.
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ __________________ THOMAS J. BOLCH COMMISSIONER
BSB/cnp/rst